IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAWONE D. NICHOLSON           :

                               :

    v.                      :  Civil Action No. DKC 20-3146

                               :

BALTIMORE POLICE DEPARTMENT,
et al.                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action are three motions to dismiss filed by a Defendant or groups of Defendants:  (1) the State of Maryland (the "State") (ECF No. 25); (2) Officer Damond Durant ("Individual Officer" or "Officer Durant") (ECF No. 27); and (3) and the Baltimore Police Department (the "BPD") and the Mayor and City Council of Baltimore (the "City") (ECF No. 28).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, two of the motions will be granted, and one will be denied.

**I.  Background[1]**

Around 3:45 pm on November 10, 2017, sixteen-year-old Jawone D. Nicholson ("Plaintiff"), who is an African American male, was waiting for his after-school pick-up van on a cul-de-sac behind

---

[1] Unless otherwise noted, the facts outlined here are set forth in the amended complaint and construed in the light most favorable to Plaintiff.

his house.[2]  Plaintiff's classmate, Brian Hatcher, was also waiting

with Plaintiff for the van.  As the boys waited, they were

approached by Officer Durant, a BPD officer.  Officer Durant was

not wearing a police uniform or other attire that would signal

that he was a police officer and he did not identify himself as

one.[3]  Without cause or provocation, Officer Durant aggressively

demanded to know who Plaintiff was and why he was there.  He

remarked that he lived in the neighborhood and had never seen

Plaintiff before.  Plaintiff replied that he also lived in the

neighborhood and was waiting for his after-school pick-up van.

Plaintiff added that he had never seen Officer Durant before either

and that he did not have to answer his questions.  Officer Durant

continued to question Plaintiff in an intimidating manner and

threatened to call the police on him.  Plaintiff responded that he

and Brian were not doing anything wrong so Officer Durant could

call the police if he liked.  Officer Durant continued to question

Plaintiff while obscuring his hands in his coat pocket.  Observing

this, Plaintiff began to fear for his safety and attempted to walk

---

[2] Nowhere does the complaint specify the location by county
or address.  Plaintiff's current residence is identified as
Columbia, Maryland, in Howard County, but Officer Durant assumes
that the events happened in Baltimore City.  (ECF No. 27-1, at 1.)
The City, on the other hand, assumes that Officer Durant was off-
duty and in Columbia, in Howard County.  (ECF No. 28-2, at 2).

[3] The amended complaint does not state whether Officer Durant
was on-duty at the time of the incident, and, as noted above, the
location of the events is unclear.

away from Officer Durant and to call his grandmother on his cell phone for help.  As he did, Officer Durant yelled at him, "Oh, cause you wasn't gonna do shit."  Plaintiff, afraid, turned back to face Durant and watch his movements.  Officer Durant then pulled a firearm from his coat pocket and aimed it at Plaintiff. Plaintiff thought he was being robbed and feared for his life.  By this time, Plaintiff's grandmother had answered his call and he explained to her that a man was pulling a gun on him behind their house.  Plaintiff's grandmother, mother, and sister quickly ran outside and confronted Officer Durant, asking why he had pulled a gun on a sixteen-year-old child.  As they approached, Officer Durant concealed his gun but kept his hands in his pocket in a threatening manner.  Plaintiff's sister asked him to remove his hands from his pocket since he was carrying a firearm and he responded he did not have to show his hands because he was "Baltimore City."  Plaintiff's mother asked what that meant and only then did Officer Durant remove a police badge from his coat pocket and reveal that he was a Baltimore City police officer. Both Plaintiff's mother and Officer Durant called the police, although it is unclear whether or not they came.

The next day, Plaintiff's mother went to BPD headquarters to file a complaint with the internal affairs office.  The officers on duty laughed at her request, stating "We heard about this.  At least your son didn't die."  The officers then told her that there

were no internal investigators there on a Saturday and she could come back on Monday.

Plaintiff has been required to relive this traumatic experience on a daily basis because his bedroom window looks out onto the cul-de-sac where the incident took place and because he must walk past the cul-de-sac in order to get to school. Plaintiff has suffered from severe emotional stress physically manifesting as anxiety, loss of sleep, depression, bouts of spontaneous crying, hypervigilance, days-long period of social withdrawal, and fear of the police.

On or about December 7, 2017, Plaintiff's mother filed a complaint against Officer Durant with the Baltimore City Civilian Review Board. The Civilian Review Board complaint led to an internal investigation of Officer Durant, but no disciplinary charges were filed until after the statute of limitations for doing so had expired. Thus, the disciplinary charges were dismissed, and Officer Durant faced no consequences for his conduct. Officer Durant and the City were previously sued over an incident in which Officer Durant assaulted a citizen and broke his jaw while responding to a call for service. Plaintiff believes the lawsuit terminated in a settlement.

On September 23, 2020, Plaintiff filed a complaint in the Circuit Court for Baltimore City against Officer Durant, the State, the City, and the BPD. (*See* ECF No. 2). On October 29, 2020, the

4

City and the BPD, with consent of the State, removed the case to the United States District Court for the District of Maryland. (ECF No. 1).  On November 24, 2020, Plaintiff filed an amended complaint, (ECF No. 18), containing twelve counts:

> Count I: Fourth Amendment Violation under 42 U.S.C. § 1983 – False Arrest – against all Defendants
>
> Count II: Fourth Amendment Violation under 42 U.S.C. § 1983 – False Imprisonment – against all Defendants
>
> Count III: Fourth Amendment Violation under 42 U.S.C. § 1983 – Excessive Force – against all Defendants
>
> Count IV: Maryland Declaration of Rights, Art. 24 and 26 claims, for False Arrest – against all Defendants
>
> Count V: Maryland Declaration of Rights, Art. 24 and 26 claims, for False Imprisonment – against all Defendants
>
> Count VI: Maryland Declaration of Rights, Art. 24 and 26 claims, for Excessive Force – against all Defendants
>
> Count VII: False Arrest – against all Defendants
>
> Count VIII: False Imprisonment – against all Defendants
>
> Count IX: Intentional Infliction of Emotional Distress – against all Defendants
>
> Count X: Gross Negligence – against all Defendants
>
> Count XI: Negligent Training, Supervision, and Retention – against Defendants State, City, and BPD
>
> Count XII: Fourth Amendment *Monell* Claim – against Defendants State, City, and BPD (This claim was added in the amended complaint.)

All four Defendants moved to dismiss some or all of the claims against them.  (ECF Nos. 25, 27, 28).  Plaintiff opposed the

motions, (ECF Nos. 29, 30, 31), and Defendants replied.  (ECF Nos.
32, 33, 37).

## II.  Standard of Review

### A.  Fed.R.Civ.P. 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction
are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the
burden of proving that subject matter jurisdiction properly exists
in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of
Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999).  In
a 12(b)(1) motion, the court "may consider evidence outside the
pleadings" to help determine whether it has jurisdiction over the
case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v.
United States,* 945 F.2d 765, 768 (4th Cir. 1991); *see
also Evans,* 166 F.3d at 647.  The court should grant the 12(b)(1)
motion "only if the material jurisdictional facts are not in
dispute and the moving party is entitled to prevail as a matter of
law."  *Richmond,* 945 F.2d at 768.

### B.  Fed.R.Civ.P. 12(b)(6)

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the
sufficiency of the complaint.  *Presley v. City of Charlottesville*,
464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need
only satisfy the standard of Fed.R.Civ.P. 8(a), which requires a
"short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  At this stage, all

well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). *See also, Mays v. Sprinkle*, --- F.3d ---, 2021 WL 1181273, *6 (4th Cir. March 30, 2021) ("[O]n a motion to dismiss, we cannot rely on facts not found in the complaint or draw inferences in the [defendant's] favor."). But "[r]ule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).

In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus,

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. Analysis

### A.   Individual Officer's Motion to Dismiss

While Officer Durant is named as a Defendant in Counts I-X, he moves to dismiss only Count IX (Intentional Infliction of Emotional Distress) and filed an answer as to all other claims asserted against him. (*See* ECF Nos. 26 & 27). Officer Durant argues that Count IX fails to state a claim under Fed.R.Civ.P. 12(b)(6) because it fails to allege the second and fourth elements necessary to state a claim under Maryland law for IIED. (*See* ECF No. 27-1, at 5-8).

> To recover for IIED under Maryland law, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. [*Harris v. Jones*, 281 Md. 560, 566 (Md. 1977)]; *see also Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 466 (D.Md. 2008) (citing *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 58, 502 A.2d 1057 (1986)). All four elements must be established, and the liability for the tort should be imposed sparingly, "its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Caldor, Inc. v. Bowden*, 330 Md. 632, 642, 625

> A.2d 959 (1993) (quoting *Figueiredo–Torres v.
> Nickel*, 321 Md. 642, 653, 584 A.2d 69 (1991)).

*Brengle v. Greenbelt Homes, Inc.*, 804 F. Supp. 2d 447, 452 (D.Md. 2011).

Plaintiff's amended complaint sufficiently alleges both that Officer Durant's conduct was extreme and outrageous, and that he has suffered severe emotional distress as a result of such conduct. As noted above, the amended complaint alleges that, without identifying himself as a police officer, Defendant Durant detained a minor child at gunpoint simply because he had not seen him in the neighborhood before.  Such conduct, when viewed in the light most favorable to Plaintiff, can be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater v. Guttmann*, 194 Md. App. 431, 448 (2010) (quoting *Harris*, 281 Md. at 567).  These allegations far surpass those presented in *Williams v. Prince George's County*, 112 Md. App. 526 (1996), where a person clearly identified as a police officer stopped the plaintiff, who was on his way to work, based on probable cause to believe the car he was driving was stolen.  The plaintiff was driving his mother's car with her permission.  The car had previously been stolen, but after its recovery, erroneously remained listed as stolen.  The presence of probable cause and a uniform are two significant differences.  The

age of the plaintiff might be a third.  In any event, the facts, construed in the light most favorable to the Plaintiff, as is required at this stage of the case, are adequate.

As to the fourth element, Officer Durant argues that Plaintiff has failed to plead sufficiently severe emotional distress because "[t]here are no monetary facts that describe the extent of his financial hardship . . . or other expenses . . . [and] no subjective facts to describe his alleged mental anguish, emotional distress, loss of dignity, trauma, inconvenience, or exacerbation of preexisting condition."  Again, to the contrary, Plaintiff has sufficiently alleged severe emotional distress including that he suffers from: anxiety, loss of sleep, depression, bouts of spontaneous crying, hypervigilance, fear of the police, and days-long period of social withdrawal.  (ECF No. 18, at 9-10).  Officer Durant does not dispute that Plaintiff has pled facts sufficient to establish the first and third elements of an IIED claim and the court finds that such elements are also sufficiently pled. Accordingly, Officer Durant's motion to dismiss Count IX, (ECF No. 27), will be denied.

**B.   The State's Motion to Dismiss**

Plaintiff lodges four claims against the State under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from unreasonable seizures (Counts I-III and XII).  Plaintiff also

asserts a variety of state constitutional (Counts IV-VI) and tort claims (Counts VII-XI).[4]

The State argues that all of Plaintiff's claims against it should be dismissed because the State is entitled to Eleventh Amendment immunity.  Plaintiff argues that the State has waived its entitlement to Eleventh Amendment immunity by consenting to removal of this case from state court.  (ECF No. 29, at 6-10) (citing *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 619-20 (2002)).

> Sovereign immunity is the privilege of the sovereign not to be sued without its consent.  The language of the Eleventh Amendment only eliminates the basis for our judgment in the famous case of *Chisholm v. Georgia,* 2 U.S. 419, 2 Dall.  419, 1 L.Ed. 440 (1793), which involved a suit against a State by a noncitizen of the State.  Since *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), however, we have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant.  *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991); *see Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  Our cases hold that the States have retained their traditional immunity from suit, "except as altered by the plan of the Convention or certain constitutional amendments."

---

[4] Maryland state courts recognize a common law action for damages when an individual is deprived of his liberty in violation of the Maryland Declaration of Rights.  *See Okwa v. Harper*, 360 Md. 161, 757 A.2d 118, 140 (2000) (recognizing a common law action for damages for an alleged violation of Article 24 in an excessive force case); *Ford v. Baltimore City Sheriff's Office*, 149 Md.App. 107, 814 A.2d 127, 143 (2002) (same for an excessive force claim under Article 26).

> *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240,
> 144 L.Ed.2d 636 (1999).  A State may waive its
> sovereign immunity at its pleasure, *College Savings
> Bank v. Florida Prepaid Postsecondary Ed. Expense
> Bd.*, 527 U.S. 666, 675-676, 119 S.Ct. 2219, 144
> L.Ed.2d 605 (1999), and in some circumstances
> Congress may abrogate it by appropriate
> legislation.  But absent waiver or valid
> abrogation, federal courts may not entertain a
> private person's suit against a State.

*Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) (footnotes omitted).  Removal of an action to federal court is one species of waiver.  In *Lapides*, 122 S.Ct. at 1646, the Court ruled that "the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity."  Importantly, however, the Court limited its ruling to "state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings."  *Id*. at 1643.  The federal claim that was the basis for removal was, as here, under 42 U.S.C. § 1983.  The "State is not a 'person' against whom a § 1983 claim for money damages might be asserted."  *Id*.  Because the § 1983 claim was not viable, it was not necessary to consider Eleventh Amendment immunity as to the only federal claim.  So, too, here.  The immunity arguments concerning the state-law claims will be discussed below.

### 1.   Section 1983 and *Monell* Claims

The State alternatively moves to dismiss Plaintiff's § 1983 and *Monell* claims pursuant to Fed.R.Civ.P. 12(b)(6), arguing that

Plaintiff fails to state a claim because the State of Maryland is not a "person" subject to suit under 42 U.S.C. § 1983.

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "*person* acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).  A state is not a "person" within the meaning of § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–65 & 70–71 (1989)).  Thus, Plaintiff could present no set of facts to support his claims against the State in Counts I–III and such counts must be dismissed with prejudice.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 826 (D.Md. 2013) (noting that "dismissal with prejudice is proper if there is no set of facts that plaintiff could present to support his claim.").

Likewise, Plaintiff can assert no claim against the State under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  The Supreme Court determined in *Monell* that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants . . . where those defendants were executing an official policy or custom of the local government resulting in a violation of the plaintiff's rights.  *See id.*, at 690 (holding that "[m]unicipalities and other local government units" are "persons" within the meaning of § 1983).

The State, however, is not a *local* government entity and therefore, cannot be sued under *Monell*.  Accordingly, Count XII also fails to state a claim under Fed.R.Civ.P. 12(b)(6) and must be dismissed.

### 2.   State Claims

The State moves to dismiss Plaintiff's Counts IV-XI on the ground that it is entitled to Eleventh Amendment immunity and, alternatively, to state sovereign immunity because it has not waived such immunity under the Maryland Tort Claims Act ("MTCA"). (ECF No. 25-1, at 6-10).  Plaintiff insists that the State enjoys no immunities.  (ECF No. 29, at 10-13).

The doctrine of state sovereign immunity is "firmly embedded in the law of Maryland." *Katz v. Wash. Suburban Sanitary Comm'n*, 284 Md. 503, 507, 397 A.2d 1027, 1030 (1979); *see Bd. of Educ. of Balt. Cty. v. Zimmer-Rubert*, 409 Md. 200, 240, 973 A.2d 233, 211 (2009); *Bd. of Howard Cmty College v. Rugg*, 278 Md. 580, 584, 366 A.2d 360, 362-63 (1976) (declining to abrogate sovereign immunity by judicial fiat); *Jekofsky v. State Roads Comm'n*, 264 Md. 471, 474, 287 A.2d 40, 41-42 (1972) (same).  Therefore, unless the Maryland General Assembly has waived immunity, state sovereign immunity bars an individual from maintaining a suit for money damages against the State of Maryland or one of its agencies for violations of State law.  *See Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 306, 780 A.2d 410, 424 (2001) (citing *Catterton v. Coale*, 84 Md. App. 337, 345-46, 579 A.2d 781, 785 (1990)); *see*

14

*also Samuels v. Tschechtelin*, 135 Md. App. 483, 522, 763 A.2d 209, 230 (2000).  As the State correctly notes in its motion to dismiss, the Maryland Tort Claims Act ("MTCA") is a *limited* waiver of the State's sovereign immunity that applies only to "tortious conduct . . . committed by 'State personnel'– a defined term." *Estate of Burris v. State*, 360 Md. 721, 737 (2000).  *See also State v. Card*, 104 Md.App. 439, 447, 656 A.2d 400, 404, *cert. denied*, 339 Md. 643, 664 A.2d 886 (1995) ("There is nothing in [the MTCA] itself, or in its history, suggesting an intent that the State be liable for the conduct of persons other than those included within the definition of 'State personnel.'").  Critically, the definition of "State personnel" does *not* include members of the Baltimore Police Department.  *See* Md. Code Ann., State Gov't § 12-101(a).  Accordingly, the State retains immunity from all state-law claims asserted against it in Counts IV-XI.

Because all of Plaintiff's federal and state claims against the State will be dismissed, the State will be dismissed as a Defendant in this case.

**C.   The BPD's Motion to Dismiss**

Plaintiff asserts claims against the BPD under § 1983 and *Monell* for violations of his Fourth Amendment rights (Counts I-III and XII), for violations of state law under Articles 24 and 26

of the Maryland Constitution's Declaration of Rights (Counts IV-VI), and for common law torts (Counts VII-XI).[5]

### 1.  Section 1983 and *Monell* Claims

The BPD argues that this court lacks subject matter jurisdiction over Plaintiff's § 1983 and *Monell* claims because it is a state entity entitled to Eleventh Amendment immunity.[6] Alternatively, it argues that pursuant to Fed.R.Civ.P. 12(b)(6), Counts I-III should be dismissed because there is no *respondeat superior* liability under § 1983 and that Count XII should be dismissed because Plaintiff's allegations fail to satisfy the requirements for asserting a *Monell* claim.  Plaintiff maintains that the BPD is not entitled to any immunities and that he has sufficiently pleaded a *Monell* claim.

---

[5] Plaintiff states that he has pled two types of claims against Defendant BPD: (1) claims arising under *respondeat superior* liability and (2) claims arising directly against the BPD based on its own negligence for failing appropriately to operate a law enforcement agency, including a failure to train.  (*See* ECF No. 30, at 7).  Plaintiff does not explicitly state which claims arise under which theories, but the court presumes based on the allegations in the amended complaint that all claims against the BPD arise under *respondeat superior* liability except for Counts XI (Negligent Training, Supervision, and Retention) and Count XII (*Monell* Claim).

[6] *See Est. of Bryant v. Baltimore Police Dep't*, No. CV ELH-19-384, 2020 WL 673571, at *28 (D.Md. Feb. 10, 2020) ("[S]tate sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an 'arm of the state,' including state agencies.").

The BPD, while a state entity under Maryland law, is considered a municipal entity subject to suit for purposes of § 1983.[7]   The *Monell* Court explained that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983."   *Id.* at 694; *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).   But, liability attaches "only where the municipality *itself* causes the constitutional violation at issue."   *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *accord Holloman v. Markowski*, 661 F. App'x 797, 799 (4th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1342 (2017).   There can be no vicarious liability under § 1983, *see Connick v. Thompson,* 563 U.S. 51, 60 (2011).   Thus, the only possible claim Plaintiff could bring against the BPD for the

---

[7]  Suggestions that BPD is a state agency for Eleventh Amendment purposes in *dicta* in two cases in 2019 have since been rejected.   Cases now are uniform that "for the purpose of § 1983 'the BPD is too interconnected with the government of the City so as to constitute a State agency' and thus the BPD is subject to suit under § 1983." *Grim v. Baltimore Police Department*, No. CV ELH 18-3864, 2019 WL 5865561 at *14 (D.Md. Nov. 8, 2019) (quoting *Chin v. City of Balt.*, 241 F. Supp. 2d 545, 548 (D.Md. 2003)). *See also Hill v. CBAC Gaming LLC*, No. CV DKC 19-0695, 2019 WL 6729392, at *4-5 (D.Md. Dec. 11, 2019).   The factors weighing most heavily against recognizing BPD as an arm of the state are financial and its involvement in local, not statewide concerns. The degree of autonomy from state control presents a mixed picture, and state law labels BPD as a state agency.   *Est. of Bryant*, 2020 WL 673571 at *29-31.

actions of Officer Durant is a *Monell* claim. Accordingly, Plaintiff's Counts I-III against BPD must be dismissed for failure to state a claim.

A viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). There are two general theories under which a *Monell* claim can be made in the context of alleged civil rights violations by local police:

> The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers. A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example.

*Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). Either type of claim must

> be carefully controlled at critical points to avoid imposing by indirection a form of vicarious municipal liability flatly rejected by *Monell*. Those critical points are (1)

18

> identifying the specific "policy" or "custom";
> (2) fairly attributing the policy and fault
> for its creation to the municipality; and (3)
> finding the necessary "affirmative link"
> between identified policy or custom and
> specific violation.

*Id.* Here, Plaintiff's Count XII seems to allege municipal

liability under both a failure to train theory and a condonation

theory.  For the reasons stated below, however, both theories fail.

**a.   Failure to Train**

> A municipality can [] be liable for an
> established "policy" through a failure to
> train, if it "reflects a 'deliberate' or
> 'conscious' choice" to not do so.  [*Harris*,
> 489 U.S. at 389].    Training policy
> deficiencies can include (1) "express
> authorizations of unconstitutional conduct,"
> (2) "tacit authorizations" of such
> unconstitutional conduct, and (3) failures to
> adequately "prohibit or discourage readily
> foreseeable conduct in light of known
> exigencies of police duty." *Spell*, 824 F.2d
> at 1390.  No matter which theory is alleged,
> the plaintiff must point out "a specific
> deficiency" in training, "rather than general
> laxness or ineffectiveness in training." *Id*.
> But the municipality will only be liable if
> "the need for more or different training is so
> obvious, and the inadequacy so likely to
> result in the violation of constitutional
> rights, that the policymakers of the city can
> reasonably be said to have been deliberately
> indifferent to the need." *Harris*, 489 U.S. at
> 390, 109 S.Ct. 1197 (emphasis added); *accord*
> *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341
> (4th Cir. 1994).

*Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283, 309 (D.Md.

2020).  Importantly, such a deliberate or conscious choice by a

municipality cannot be shown simply by proving a single instance

of police misconduct and without "submitting proof of a single action taken by a municipal policymaker." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985)).  Even at the pleading stage, a plaintiff seeking to impose liability on a failure to train theory cannot rely on legal conclusions and speculations, but must allege at least some "facts revealing: (1) the nature of the training; (2) that any failure to train was a deliberate or conscious choice by the municipality; and (3) that any alleged constitutional violations were actually caused by the failure to train." *Lewis v. Simms*, AW-11-CV-2172, 2012 WL 254024, at *3 (D.Md. Jan. 26, 2012) (quoting *Drewry v. Stevenson*, WDQ-09-2340, 2010 WL 93268, at *4 (D.Md. Jan. 6, 2010), *aff'd*, 582 F. App'x 180 (4th Cir. 2014)).

Here, Plaintiff alleges that Defendant BPD:

> had a duty to ensure Baltimore Police Department officers were trained to conduct their law enforcement activities within constitutional bounds, ensure officers knew how to treat and process citizen complaints of misconduct, ensure Internal Affairs investigators were trained to understand statutes of limitation and the relevant time-frame in which investigations must conducted and disciplinary charges filed, and a duty to discipline and/or fire officers who failed to conduct their law enforcement activities in a constitutional manner.

(ECF No. 18, at 29).  Without any factual enhancement, he then concludes that the BPD "failed to ensure that their officers conducted their law enforcement activities within constitutional

bounds." (ECF No. 18, at 29). Plaintiff does not allege any factual details about the sort of training that BPD Officers actually receive. His references to generalized deficiencies within the department do not sufficiently flesh out his allegations. Even if Plaintiff had sufficiently alleged a deficiency in the training program, however, he also has not alleged that any such failure reflects a deliberate or conscious choice by any municipal decisionmaker as he points to only a single prior instance of police misconduct. Finally, Plaintiff has not alleged any facts sufficient to establish the required causal nexus between the alleged failure to train and his injuries. For these reasons, Plaintiff has not sufficiently stated a *Monell* claim based on failure to train.

   **b.   Condonation Theory**

   Plaintiff's assertions of liability based on the BPD's purported inaction are similarly insufficient. Under the condonation "theory of liability, a [municipal entity] violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell*, 824 F.2d at 1390). To prevail under this theory, a plaintiff must point to a "persistent and widespread practice[ ] of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had actual or constructive

knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference." *Spell*, 824 F.2d at 1386-91 (alterations omitted). Both knowledge and indifference can be inferred from the "extent" of employees' misconduct. *Id.* at 1391. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant" violations will. *Id.* at 1387. The existence of such a "custom or usage" may be found in "persistent and widespread . . . practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." *Monell*, 436 U.S. at 691. A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997).

Plaintiff asserts that the BPD "permitted and tolerated a pattern and practice of unjustified, unreasonable, and unlawful abuses of their officers' law enforcement authority" and "caused [its] employees to believe that conducting their law enforcement activities unconstitutionally would not be aggressively, honestly,

and properly investigated." (ECF No. 18, at 29). To support these allegations, Plaintiff points to a single prior incident in which the BPD was sued related to allegations that Officer Durant broke an individual's jaw while responding to a call for service. Plaintiff essentially argues that because such allegations ultimately resulted in a settlement rather than Officer Durant's termination or the taking of his firearm, the BPD created a custom by condonation giving rise to § 1983 liability. This is not so. This isolated incident of prior misconduct alone is insufficient to meet the high bar required for stating a *Monell* claim based on a theory that the BPD acquiesced in a widespread pattern of constitutional violations. *See Lytle*, 326 F.3d at 473 ("It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes."); *see also Carter v. Morris,* 164 F.3d 215, 220 (4th Cir. 1999) (internal citations and quotations omitted)("[A] meager history of isolated incidents does not approach the widespread and permanent practice necessary to establish municipal custom."). Accordingly, Plaintiff fails to state a *Monell* claim against the BPD under any viable theory and his Count XII must be dismissed.

## 2.   State Claims

Plaintiff's state-law claims against the BPD are a different matter.   State law defines the BPD as a State agency.[8]   *See Est. of Anderson v. Strohman*, 6 F. Supp. 3d 639, 642 (D.Md. 2014) ("Contrary to commonly held belief, the BPD has long been considered a state agency with sovereign immunity to state law claims."); *see also Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 944 A.2d 1122, 1128-30 (2008).   "State sovereign immunity 'protects the State not only from damage actions for ordinary torts but also from such actions for State constitutional torts.'"   *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D.Md. 2003) (citing *Baltimore Police Department v. Cherkes*, 780 A.2d 410, 424 (Md.Ct.Spec.App. 2001)).   Thus, the BPD "enjoys sovereign immunity

---

[8] Confusion stems, however, from the fact that, despite being considered a state agency under Maryland law, the BPD is also included among the list of "local governments" under the Local Government Tort Claims Act ("LGTCA").   *See* Md.Code Ann., Cts. & Jud. Proc. § 5-301(d)(21).   The LGTCA was enacted by Maryland General Assembly to limit the civil liability of local governments and their employees.   *See* Md. Code Ann., Cts. & Jud. Proc. § 5-303(a)(1) (limiting the damages recoverable against local government agencies.   But the LGTCA is applicable to the BPD only to the extent that it imposes on the BPD the duty to pay judgments entered against its employees.   The LGTCA preserves, however, the defenses and immunities the BPD otherwise has at common law.   *See* Md.Code Ann., Cts. & Jud. Proc. § 5-303.   Put simply, the LGTCA only prohibits the BPD from asserting sovereign immunity to avoid its statutorily imposed duty to defend or indemnify its employees.   Even under the LGTCA, plaintiffs cannot bring state law claims directly against the BPD for the actions of Baltimore police officers acting within the scope of their employment.   *See Est. of Anderson*, 6 F. Supp. 3d at 642-43.

24

from actions for damages based on state common law torts or state constitutional torts" asserted against it. *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1026 (D.Md. 2019). Accordingly, all claims asserted against the BPD based on state law (Counts IV-XI) must be dismissed. Because none of Plaintiff's claims against the BPD survive, the BPD will be dismissed as a Defendant in this case.

### D.   The City's Motion to Dismiss

Plaintiff alleges against the City four separate violations of his Fourth Amendment rights under § 1983 and *Monell* (Counts I-III and XII). Plaintiff also alleges violations of state law including violations of Articles 24 and 26 of the Maryland Constitution's Declaration of Rights (Counts IV-VI) and common law torts (Counts VII-XI). The City moves to dismiss all claims asserted against it, arguing that it cannot be held liable for actions or inactions of Officer Durant or the BPD because, as discussed above, BPD officers are agents of the state and thus, neither agents nor employees of the City. The City is correct, and all claims asserted against it will be dismissed.

### 1.   Section 1983 and *Monell* Claims

The City argues the court should dismiss Plaintiff's § 1983 and *Monell* claims because the BPD is not controlled, managed, or supervised by the City and therefore, as a matter of law, Plaintiff

can prove no set of facts entitling him to judgment against the City for the alleged conduct of Officer Durant.

As a preliminary matter, because the City is a municipality, Plaintiff's claims against it under § 1983 for violations of his Fourth Amendment rights can only be brought under the standard set forth in *Monell*.  Accordingly, Counts I-III, which assert claims directly under § 1983 rather than under *Monell*, must be dismissed.

In suing a municipal government under *Monell*, a plaintiff must establish both the existence of a constitutional violation on the part of the police officer and that any constitutional violation was proximately caused by a policy, custom, or practice of the defendant municipality.  *See Monell*, 436 U.S. at 694. Plaintiff's Count XII fails because he cannot satisfy the second requirement.  The City, as a matter of law, is not permitted to regulate or supervise the BPD.  *See* Baltimore City Charter, Art. II, § 27 (explicitly prohibiting any "ordinance of the City or act of any municipal officer" from attempting to "conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner").  Absent the power to control the police department, liability cannot attach to the City for actions taken by police officers.  As this Court has observed:

> Baltimore police officers are state employees free from the City's supervision and control. The City sets no policy or custom that Baltimore police officers execute, and the City cannot be liable for the conduct of [BPD

> Officer Defendants] under § 1983 . . . a § 1983
> claim cannot be brought against the City for
> Baltimore police officer conduct because it
> does not sufficiently control the BPD and
> cannot be considered to employ Baltimore
> police officers.  Municipal liability under
> *Monell* cannot attach to the City for the
> unconstitutional actions of Baltimore police
> officers.

*Estate of Anderson*, 6 F. Supp. 3d at 644-46; *see also Bradley v. Balt. Police Dep't*, 887 F. Supp. 2d 642, 647-48 (D.Md. 2012) (dismissing plaintiff's § 1983 claims against the City because the City does not exercise sufficient control over BPD to be liable for its actions).  Put simply, because the BPD is not controlled, managed, or supervised by the City, Plaintiff cannot satisfy the second requirement for bringing a *Monell* claim under § 1983. Accordingly, Plaintiff's *Monell* claim against the City in Count XII also fails.

   **2.   State Claims**

   Likewise, Plaintiff cannot bring state-law claims against the City based on the actions of BPD officers or employees.[9]  To impose *respondeat superior* liability, the defendant must have an agency or employment relationship with the alleged wrongdoer.  *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 392 (1982). As stated above, under Maryland law, BPD is not an agency of the

---

   [9] All factual allegations in Counts IV-XI pertain only to conduct by Officer Durant and thus, are necessarily asserted against the City under a theory of *respondeat superior*.

City; it is an agency of the state. *See* PUB. LOCAL LAWS OF MD., Art. 4, § 16-2 (a) (2014) ("The Police Department of Baltimore City is hereby constituted and established as an agency and instrumentality of the State of Maryland."); *Clark*, 404 Md. at 26-27. As a result, "the City does not employ Baltimore police officers and is not liable for their conduct under state law." *Estate of Anderson*, 6 F. Supp. 3d at 644. Thus, all of Plaintiff's state-law claims against the City (Counts IV-XI) must be dismissed. Given that none of Plaintiff's claims against the City survive, the City will be dismissed as a Defendant in this case.

**Conclusion**

For the foregoing reasons, the partial motion to dismiss filed by Officer Durant will be denied; and the motions to dismiss filed by the State, and the City and BPD will be granted. A separate order will follow.

___/s/_____
DEBORAH K. CHASANOW
United States District Judge
