IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |     |                              |
|------------------------------|-----|------------------------------|
| JAWONE D. NICHOLSON          |  :  |                              |
|                              |  :  |                              |
|    v.                        |  :  | Civil Action No. DKC 20-3146 |
|                              |  :  |                              |
| BALTIMORE POLICE DEPARTMENT, |  :  |                              |
| et al.                       |  :  |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action is the motion to alter or amend the judgment, or in the alternative, motion for new trial nisi remittitur filed by Defendant Damond Durant ("Mr. Durant"). (ECF No. 145). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to alter or amend the judgment, or in the alternative, motion for new trial nisi remittitur will be denied.

**I.  Background**

Plaintiff Jawone D. Nicholson ("Mr. Nicholson") filed this action in state court against the State of Maryland, the Mayor and City Council of Baltimore, the Baltimore Police Department, and Mr. Durant. (ECF Nos. 1; 2). The case arose from an encounter in Howard County between Mr. Durant, an off-duty Baltimore City police officer, Mr. Nicholson, and a friend of his. All three lived in Howard County at the time. After the case was removed to this

court, (ECF No. 1), Mr. Nicholson filed an Amended Complaint alleging that Mr. Durant pulled a firearm on Mr. Nicholson, (ECF Nos. 18, at 2).   The Amended Complaint contains the following claims against all four then-defendants:   (I) False Arrest in violation of the Fourth Amendment to the United States Constitution, (II) False Imprisonment in violation of the Fourth Amendment, (III) Excessive Force in violation of the Fourth Amendment, (IV) False Arrest in violation of Articles 24 and 26 of the Maryland Declaration of Rights, (V) False Imprisonment in violation of Articles 24 and 26, (VI) Excessive Force in violation of Articles 24 and 26, (VII) False Arrest in violation of Maryland common law, (VIII) False Imprisonment in violation of Maryland common law, (IX) Intentional Infliction of Emotional Distress, and (X) Gross Negligence. (ECF No. 18, at 10).   The Amended Complaint also contains a claim for Negligent Training, Supervision, and Retention (XI) and a *Monell* claim (XII) against the State of Maryland, Baltimore Police, and Mayor and City Council of Baltimore.   (ECF No. 18, at 10-31).

Motions to dismiss were granted in part and denied in part, and all claims against the State of Maryland, the Baltimore Police Department, and the Mayor and City Council of Baltimore were dismissed. (ECF Nos. 38; 39).   Discovery was conducted concerning the remaining claims against Mr. Durant.   Summary judgment was granted in part and denied in part on Mr. Durant's motion.   (ECF

Nos. 87; 88).   Judgment was entered in favor of Mr. Durant on portions of Counts I, II, IV, V and VI, and the entirety of Counts VII, VIII, and IX.   (*Id.*).   The remaining claims came on for trial before a jury.

After a three-day trial, the jury found in favor of Mr. Durant on the claims for unlawful seizure and excessive force under both the Fourth Amendment and Maryland Declaration of Rights, and gross negligence as to the constitutional claims.   (ECF No. 135).   The jury found for Mr. Nicholson on the claim for gross negligence by a private person and awarded Mr. Nicholson $250,000 as compensatory damages.   (*Id.*).

On May 2, 2024, Mr. Durant filed a motion to alter or amend the judgment, or in the alternative, for a new trial nisi remittitur.   (ECF No. 145).   Mr. Nicholson filed an opposition on May 20, 2024, (ECF No. 148), and Mr. Durant replied on June 10, 2024, (ECF No. 151).

## II.  Analysis

Mr. Durant challenges the decision to allow Mr. Nicholson to pursue the gross negligence claim against him in his private, as opposed to law enforcement, capacity.   The matter arose during the final pretrial conference when the parties and the court were discussing jury instructions.   Mr. Durant argues that the court erred in allowing the jury to consider a claim for gross negligence by a private person because the Amended Complaint does not contain

3

such a cause of action.  (ECF No. 145-1, at 9-14).  Specifically, Mr. Durant contends that:  (1) Mr. Nicholson "asserted this new theory of liability five (5) days before trial[,]" which "precluded [Mr. Durant] from engaging in any discovery and moving for judgment on the claim prior to trial[;]" (2) "there is no evidence in the record to suggest that [Mr. Durant] was on notice, prior to the second pretrial conference before this Court, that [Mr. Nicholson] was pursuing a theory of liability for actions in breach of a duty of a private citizen[;]" and (3) "[e]ven if [] conversations [between counsel] were sufficient to establish notice . . . such notice was still far beyond the close of discovery . . . and the dispositive motion deadline . . . , precluding [Mr. Durant] from properly being able to defend himself."  (ECF No. 145-1, at 12-14).

Mr. Nicholson responds that:  (1) during trial, Mr. Durant waived the argument that gross negligence as a private person was not pleaded for purposes of Rule 50; (2) the argument that gross negligence as a private person was not pleaded is not a cognizable argument under Rule 59(e); (3) Mr. Durant's motion fails on its merits because the Amended Complaint alleged gross negligence as a private individual; and (4) Mr. Durant has long known that private action is a part of the case.  (ECF No. 148, at 5-16).

Mr. Nicholson first expressed—to the court during the final pretrial conference—his understanding that the Amended Complaint

encompassed, and he intended to pursue, a claim against Mr. Durant even if the jury found that he was not acting under color of state law for his federal claims or within the scope of employment for the state law claims.

At that time, the court expressed skepticism as to whether the Amended Complaint included a claim for gross negligence as a private person. (ECF No. 140, at 13-23, 26, 31-32). It explained that on summary judgment it understood the Amended Complaint as only raising a claim for gross negligence as an officer. (*Id.* at 26). It also noted that Mr. Nicholson had not included in his proposed jury instructions the duty that Mr. Durant owed as a private person. (*Id.* at 14). Mr. Nicholson's counsel responded that the duty Mr. Durant owed was the duty "[n]ot to assault another private citizen." (*Id.*). He acknowledged that the Amended Complaint does not contain the word "assault," but contended that it "alleged the facts that demonstrate an assault." (*Id.* at 16). Mr. Nicholson's counsel also represented to the court that he and Mr. Durant's counsel had had conversations about whether gross negligence as a private person was part of the case:

> I've explained that to counsel in discussions
> going back months from today, maybe many
> months. I can probably even find it in email.
> As soon as counsel began to raise this
> question of scope of duty, my response
> immediately to counsel was, you know, and
> again, it was in discussions that aren't
> necessarily for the court but just this narrow
> part of the discussion was that I'm surprised

5

you're not conceding scope of employment
because we have the gross negligence count and
he could be liable for gross negligence. And
counsel never said to me your gross negligence
counts turn on your constitutional count and
so it's all the same. In fact, he said words
to the effect of well, that might be true but
that's a high standard and the jury would have
to find gross negligence in that case. And
that discussion was had. So counsel was on
notice that we viewed the complaint this way,
and it was incumbent upon him if he was going
to seek summary judgment, which is what this
amounts to as that count standing alone, that
it be done before this point. So he absolutely
knew that, Your Honor, and that's been our
intention all along.

(ECF No. 140, at 22-23). Mr. Durant's counsel responded:

I'm not going to disagree with counsel that
we've had these discussions, but by the same
token we've been analyzing the complaint as
preparing for trial and we've come to a
similar conclusion. So it's not a matter of
anything other than we don't feel the facts
and the evidence are there for this
theory . . . [T]here's no facts alleged that
is there for this . . . When I took over the
case, we certainly brought up the idea that
the only count that would ever have individual
liability would be a gross negligence, but I
never -- certainly never conceded that I
thought it was legitimate. So I, you know, or
that it was supported by the allegations in
the complaint. I just said yes, under the
technical rule the only count that doesn't
allege color of law is gross negligence.

(*Id.* at 23-24). Mr. Durant's counsel did not contradict Mr.
Nicholson's counsel's statement that these discussions had
occurred months prior.

During the pretrial conference, the court instructed Mr. Nicholson to file supplemental proposed jury instructions with more detail as to the potential cause of action for gross negligence as a private person.  (ECF No. 140, at 14).  Mr. Nicholson did so and included Mr. Durant's responses to his proposed jury instructions.  (ECF Nos. 121; 122).  In his responses, Mr. Durant again objected to allowing the jury to consider the cause of action.  In response to Mr. Nicholson's proposed instruction defining assault, (ECF No. 121, at 1-2), Mr. Durant stated:

> Defendant continues his objection to this theory as there was no assault count in the Amended Complaint.  Further, the sole allegation of assault in the Amended Complaint is that Defendant pointed a gun at Plaintiff.  *See* Paragraph 98 of the Amended Complaint.  Discovery is closed, and there was not a single piece of admissible evidence or testimony by Plaintiff, that Defendant ever pointed the gun at Plaintiff.

(ECF No. 121, at 3).  In response to Mr. Nicholson's proposed jury instruction defining Mr. Durant's duty as one "to refrain from any act which a reasonable person should recognize as involving an unreasonable risk of harm to another[]" and stating that "[y]ou may consider this duty in weighing the gross negligence claim[,]" (*id.* at 4), Mr. Durant did not reiterate his objection to the inclusion of the cause of action, instead providing alternative phrasing "[i]f the instruction is given," (*id.* at 5).  In response

to Mr. Nicholson's proposed instruction stating that "Defendant may be liable for gross negligence even if you find that he was acting as a private citizen and not as a police officer[,]" (*id.* at 8), Mr. Durant again provided alternative phrasing "[i]f the instruction is given," (*id.* at 9).

Ultimately, the court concluded that while the force of the Amended Complaint alleged that Mr. Durant was acting as an officer, individual allegations pled in the alternative were sufficient to encompass a claim for gross negligence as a private person.  It allowed the jury to consider the cause of action, instructing it to consider Mr. Durant's duty not to assault Mr. Nicholson:

> There is a duty to avoid placing others in reasonable apprehension of immediate harm and Plaintiff claims that the Defendant breached that duty by committing an assault. An assault occurs when a defendant places a victim in reasonable apprehension of immediate harm without legal justification. Physical contact is not necessary.  All that is required is an apparent ability from the viewpoint of the victim for the defendant to harm him.
> Persons are not responsible for assault, and therefore do not breach their duty to others based on assault, if they were defending themselves, so long as they used only such force as was reasonably necessary to protect themselves from actual attack or threat of imminent harm.
> Defendant had a duty to refrain from any act which a reasonable person should recognize as involving an unreasonable risk of harm to another.  A defendant's conduct creates a risk of harm when it results in greater risk to another person than the person would have faced absent the Defendant's conduct.  In this

> case, you may consider Defendant's duty to Plaintiff in weighing the gross negligence claim.
>
> For the plaintiff to recover damages, Plaintiff must prove that the Defendant was grossly negligent in failing to comply with the duty not to place him in reasonable apprehension of immediate harm without legal justification and that his injuries resulted from and were a reasonably foreseeable consequence of the defendant's gross negligence.

(ECF No. 137, at 18).

The parties struggle to identify the proper rubric under the Federal Rules of Civil Procedure for their arguments.  Mr. Durant filed the instant motion to alter or amend the judgment pursuant to Rule 59(e) but does not tie his argument to an underlying rule prior to or during trial.  Mr. Nicholson argues that the issue is really whether the claim should have gone forward at all—akin to a renewed motion for judgment as a matter of law under Rule 50.  (ECF No. 148, at 3, 6).  Neither party addresses Rule 15(b).

Rule 15(b)(1) provides:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.  The court may grant a continuance to enable the objecting party to meet the evidence.

As noted above, the issue arose at a pretrial conference shortly before trial was to begin.  While technically not "at trial" as contemplated by Fed.R.Civ.P. 15(b)(1), other courts have applied that rule when a party objected to the presentation to the jury of a cause of action at the pretrial conference.  *See, e.g.*, *Christmas v. Rodriguez-Colon*, No. 8:17-cv-1183-KKM-SPF, 2021 WL 4033284, at *14-15 (M.D.Fla. Sept. 3, 2021), *aff'd sub nom. Christmas v. Corizon Health Servs.*, No. 21-13400, 2022 WL 5337649 (11th Cir. Oct. 7, 2022) (denying defendants' motion for new trial where: (1) defendants had roughly three weeks' notice prior to trial that plaintiff intended to add a claim; (2) defendants never articulated prejudice "beyond the ubiquitous desire to not litigate an unpled claim[;]" (3) defendants never objected at trial to evidence pertaining to the claim, likely because it was also relevant to the other claims; and (4) allowing evidence that could prove multiple claims comported with the purpose of Rule 15(b)); *Wang v. EHang Holdings Ltd.*, No. 20-cv-00569-BLF, 2022 WL 17369132, at *2 (N.D.Cal. Mar. 8, 2022) (construing defendants' motions in limine to exclude evidence and argument regarding plaintiff's new theory that an additional defendant is liable under an existing claim as a "preemptive objection to evidence that [p]laintiff proposes to offer at trial[]" and applying Rule 15(b)(1)); *cf. Bailey v. New York State Dep't of Corr. & Cmty. Supervision*, No. 120-cv-155-FJS-CFH, 2023 WL 8530298, at *4 (N.D.N.Y. Dec. 8, 2023), *appeal*

*withdrawn*, No. 24-98, 2024 WL 1554873 (2d Cir. Feb. 27, 2024) (denying defendants' motion to amend its answer to add a defense where it had notice of plaintiff's intent to seek economic damages because the parties discussed it at the pretrial conference and defendant failed to object at trial).

The normal standard for permitting amendment under Rule 15(b)(1) is whether the opposing party would be prejudiced in addressing the merits. Here, Mr. Durant's counsel did not contradict Mr. Nicholson's statement at the pretrial conference that he had told Mr. Durant's counsel months prior that he believed a claim for gross negligence as a private party was part of the case. Thus, Mr. Durant had notice for months that Mr. Nicholson may pursue this cause of action.[1]  Additionally, Mr. Durant never articulated—at the pretrial conference, in his responses to Mr. Nicholson's proposed jury instructions, at trial, or anywhere else until he filed the instant motion—how the presentation of the cause of action to the jury would prejudice him.  Even in the instant motion, the closest Mr. Durant comes to articulating prejudice is his argument that he was "precluded from engaging in any discovery and moving for judgment on the claim prior to trial." (ECF No. 145-1, at 12).  He has not articulated what form that discovery might have taken.  The facts giving rise to the gross negligence as a

---

[1] See below for a more detailed notice analysis.

private person cause of action, however, were the same as those in
all other claims.   Thus, there was no need to conduct any
additional discovery for this cause of action.

While the court ultimately ruled that the claim was already
encompassed in the Amended Complaint, had it not, Mr. Nicholson
could have moved to amend the Amended Complaint pursuant to Rule
15(b)(1), and the court would have permitted the amendment.
Indeed, presentation of the cause of action to the jury comported
with the purposes of Rule 15(b)(1) because it "aid[ed] in
presenting the merits and the objecting party fail[ed] to satisfy
the court that the evidence would prejudice that party's action or
defense on the merits."   Fed.R.Civ.P. 15(b)(1).   Hence, under Rule
15(b)(1), the court properly allowed the jury to consider the cause
of action, if amendment was necessary.

Next, Mr. Nicholson is incorrect that Mr. Durant's motion is
better construed as a renewed motion for judgment as a matter of
law.   Rule 50(a) provides:

> (1) In General.  If a party has been fully
> heard on an issue during a jury trial and the
> court finds that a reasonable jury would not
> have a legally sufficient evidentiary basis to
> find for the party on that issue, the court
> may:
> (A) resolve the issue against the party;
> and
> (B) grant a motion for judgment as a
> matter of law against the party on a claim or
> defense that, under the controlling law, can
> be maintained or defeated only with a
> favorable finding on that issue.

> (2) Motion.  A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Rule 50(b) provides that a party may file a renewed motion for judgment as a matter of law within twenty-eight days of the entry of judgment.  This rule necessarily requires the party to have made an initial motion prior to the time that the court submits the case to the jury, *Price v. City of Charlotte*, 93 F.3d 1241, 1248 (4th Cir. 1996), and that initial motion, made under Rule 50(a), "must specify the judgment sought and the law and facts that entitle the movant to judgment," Fed.R.Civ.P. 50(a)(2).

The Fourth Circuit has explained that "there is no requirement that the Rule 50 motion be in writing and be filed with the court; oral motions, in which a party specifically invokes the rule, or perhaps even colloquy with the court, fulfill the requirements of Rule 50 in some instances." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 156 (4th Cir. 2012), *as amended* (May 9, 2012) (citing *Moran v. Raymond Corp.*, 484 F.2d 1008, 1010 n.1 (7th Cir. 1973)). "If counsel moves orally before the case is submitted to the jury, counsel 'must specify the judgment sought and the law and facts that entitle the movant to the judgment,' and postverdict, counsel must sufficiently 'renew[ ]' the same[.]" *Id.* at 157 (internal citation omitted).  With regard to specificity of the judgment

sought and the law and facts that entitle the movant to judgment, the moving party must, "either in written or oral argument, provide[ ] sufficient notice to his opponent of the alleged deficiencies in the opponent's case." *Al-Sabah v. Agbodjogbe*, No.17-cv-730-SAG, 2019 WL 8192303, at *2 (D.Md. Mar. 9, 2019) (quoting *Wallace v. Poulos*, 861 F. Supp. 2d 587, 595 (D.Md. 2012)); *see also Singer v. Dungan*, 45 F.3d 823, 828-29 (4th Cir. 1995).

Here, Mr. Durant's counsel objected orally at the pretrial conference and in writing in his responses to Mr. Nicholson's proposed jury instructions to allowing the jury to consider a cause of action alleging gross negligence as a private person. (ECF No. 140, at 24 ("[T]here's no facts alleged that [are] there for this."); ECF No. 121, at 3 ("Defendant continues his objection to this theory as there was no assault count in the Amended Complaint.")). His oral and written objections, however, were to what facts were alleged in the Amended Complaint, and not to the sufficiency of the evidence presented at trial. Thus, these objections do not constitute motions for judgment as a matter of law pursuant to Rule 50(a)(2).

Objecting to what facts were alleged in the Amended Complaint is not the same as arguing that there was no evidence to support the claim—and that is somewhat difficult to argue inasmuch as the parties were very much focused precisely on that issue. Mr. Nicholson clearly preferred to have the jury conclude that Mr.

14

Durant was acting as a police officer—damages and the ability to have them paid would be enhanced by that verdict.  But, the issue was far from uncontroverted—the summary judgment ruling explicitly pointed out the potentially conflicting evidence on that point. (ECF No. 87, at 9-11).  At trial, the evidence was mixed as to whether Mr. Durant was acting solely in his personal capacity.  He was off duty, not in uniform, and at his own home.  The weapon was his personal one, although he was authorized by his employment to carry it.  He had his badge, but it was not visible until he showed it to Mr. Nicholson and his family, probably after the incident. Mr. Durant himself argued forcefully, and ultimately successfully, that he was not exercising police power at the time of this encounter during which he displayed a weapon.  Thus, there clearly was evidence to support the claim for gross negligence as a private person and a pure Rule 50 motion would have been rejected, and properly so.

### A. Motion to Alter or Amend the Judgment

Mr. Durant moves to alter or amend the judgment pursuant to Rule 59(e).  Rule 59(e), unlike Rule 50, does not require a moving party to file any particular motion before the case is submitted to the jury.  This rule requires only that the moving party file the motion within 28 days of the entry of judgment.  A motion to alter or amend governed by Rule 59(e) "need not be granted unless the district court finds that there has been an intervening change

15

of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010).  The United States Court of Appeals for the Fourth Circuit has set forth the standard for consideration of a Rule 59(e) motion to alter or amend a judgment:

> Although Rule 59(e) does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment, we have previously recognized that there are three grounds for amending an earlier judgment:  (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.  Thus, the rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings."  Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance . . . In general "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted).  "Mere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).  "The district court has considerable discretion in deciding whether to modify or amend a judgment."

*Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008).

A court's decision is free from "clear error" when it is "factually supported and legally justified." *Hutchinson*, 994 F.2d at 1081-82. Here, the decision to allow the jury to consider a claim for gross negligence as a private person did not constitute clear error because the Amended Complaint sufficiently alleges such a cause of action, or the court would have been authorized to grant an amendment under the circumstances, which it effectively did.

The Amended Complaint does not expressly include a count for negligence as a private person, although an individual count is not necessary. Fed.R.Civ.P. 10(b) (instructing that claims must be stated in separate counts only "[i]f doing so would promote clarity[]"). To state a claim for gross negligence under Maryland law, a plaintiff "must allege a duty of care, a breach of that duty, and damages as a proximate cause of the breach" and that the defendant "'intentional[ly] fail[ed] to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another' or 'thoughtless[ly] disregard[ed] the consequences [of its breach of duty] without the exertion of any effort to avoid them.'" *Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F.Supp.3d 886, 895 (D.Md. 2015) (first quoting *Swedish Civ. Aviation Admin. v. Project Mgmt. Enters.,*

17

*Inc.*, 190 F.Supp.2d 785, 803 (D.Md. 2002); then quoting *Brooks v. Jenkins*, 220 Md.App. 444, 459 (2014)).

Despite the allegation that "[a]t all relevant times, Defendant Durant acted under color of State law[,]" (ECF No. 18 ¶ 59), the Amended Complaint includes all allegations necessary to state a claim for gross negligence as a private person:

> In the alternative, Defendant Durant's brandishing a firearm at Plaintiff, a minor child, on the sole basis that he had never seen Plaintiff before constituted an *intentional failure to perform a manifest duty* and abide by the constitutional limits of policing in reckless disregard of the consequences as affecting the life of another, and evinced a thoughtless disregard of the consequences to Plaintiff's life without the exertion of any effort to avoid those consequences, *putting Plaintiff in danger*.

(ECF No. 18 ¶¶ 160, 165) (emphasis added). The court concluded that this paragraph, by a slim margin, sufficiently included an allegation that Mr. Durant owed a manifest duty to avoid putting Mr. Nicholson in danger (even if he was not acting as a police officer at the time), and that he breached that duty by "brandishing a firearm at Plaintiff." (*Id.*). Although unartfully pleaded, these allegations are—barely—sufficient to state a claim for gross negligence.

The Amended Complaint's use of "and" and "or" also supports the conclusion that Mr. Nicholson alternatively pleaded that Mr. Durant's conduct was either within or without his duties as a

police officer.  (*See* ECF No. 18 ¶¶ 55, 56) (alleging that Mr. Durant's conduct was "negligent, and/or grossly negligent, and/or intentional, and/or malicious" and that "[a]ll the allegations herein, however worded, are pleaded alternatively as acts of negligence, gross negligence, intent, and/or malice, as determined at trial by the jury in this matter[]").  In Count X (Gross Negligence), Mr. Nicholson incorporates all other allegations and alleges that "[w]hen Defendant Durant stopped, interrogated, and brandished a weapon at Plaintiff, he had no constitutional *or legally valid basis for doing so*."  (ECF No. 18 ¶¶ 155, 160) (emphasis added).  Thus, the Amended Complaint put Mr. Durant on notice that the gross negligence count was alleged against him both as a police officer ("constitutional . . . basis") and as private citizen ("legally valid basis").

Additionally, the record shows that Mr. Durant had notice that gross negligence as a private person was an issue in the case. In the joint proposed verdict form, Mr. Durant requested a special interrogatory that asked:  "Was Defendant Durant acting as a law enforcement officer, or as a private citizen, when he displayed his weapon during the encounter with Plaintiff Nicholson on November 10, 2017?" (ECF No. 97, at 2).  There was no instruction to skip any questions after the special interrogatory.  The proposed verdict form also instructed the jury to select "For Plaintiff" or "For Defendant" on the claim of "Gross Negligence"

19

and to award compensatory damages "[i]f you have found in favor of the Plaintiff on one or more of his claims[.]" (*Id.* at 3). The proposed verdict form therefore demonstrates that Mr. Durant understood that the jury could answer that Mr. Durant was acting as a "private citizen," find for Mr. Nicholson on the gross negligence claim, and award damages. (*Id.* at 2-3).

As explained above, both parties' counsel acknowledged at the pretrial conference that they had discussed whether gross negligence as a private party was part of the case. Because Mr. Durant's counsel acknowledged that he was aware that Mr. Nicholson's counsel viewed the complaint as including a claim for gross negligence as a private person, the decision to allow the jury to consider the cause of action "did not create unfair surprise[.]" *Beach Mart, Inc. v. L&L Wings, Inc.*, No. 2:11-cv-44-FL, 2021 WL 9816297, at *8-9 (E.D.N.C. Nov. 4, 2021) (denying motion to alter or amend judgment where the defendant argued that "part of the verdict form . . . included unpleaded theories of recovery[]" because the defendant had notice of the theory of recovery from the pretrial order and allegations realleging and incorporating the preceding paragraphs by reference in the complaint). Counsels' representations regarding their discussions months before the pretrial conference indicate that Mr. Durant had

notice that the claim for gross negligence as a private person was part of the case.[2]

The decision to allow the cause of action to be presented to the jury was close and carefully considered.  In the end, though, the court concluded that the Amended Complaint was pleaded broadly enough to encompass an alternative claim for gross negligence as a private person, and in any event, Mr. Durant had notice that such a claim was at issue and suffered no prejudice in discovery. Thus, there has been no clear error of law and no need to prevent manifest injustice.  Mr. Durant's motion to alter or amend the judgment will therefore be denied.

### B. Motion for a New Trial Nisi Remittitur

Mr. Durant also moves for a new trial nisi remittitur. "Remittitur, which is used in connection with Fed.R.Civ.P. 59(a), 'is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award.'"  *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 593 (4th Cir. 1996)). Pursuant to Rule 59(a), a court may "grant a new trial on all or

---

[2] Courts have also considered notice when deciding whether to grant a new trial.  *See, e.g.*, *Gautier v. Tams Mgmt., Inc.*, No. 5:20-cv-00165-FWV, 2024 WL 1399004, at *4 (S.D.W.Va. Mar. 31, 2024) (denying motion for new trial because, inter alia, "Defendants were aware of the theory of the case throughout discovery[]" and "the integrated pretrial order raises the theory[]").

some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"

The Fourth Circuit has ruled that a jury's "award shall stand unless no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon evidence that is false, or it will result in a miscarriage of justice." *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1279 (4th Cir. 1994) (citing *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 100 (4th Cir. 1991)); *see also Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (quoting *Atlas*, 99 F.3d at 594); *Cline*, 144 F.3d at 301. "[A] jury's award of damages stands unless it is grossly excessive or shocking to the conscience." *Bingman v. Baltimore Cnty.*, 714 F.App'x 244, 246 (4th Cir. 2017) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 180 (4th Cir. 2001)). "Courts defer to a jury's award of damages for intangible harms, such as emotional distress, 'because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'" *Fox*, 247 F.3d at 180 (quoting *Giles v. Gen. Elec. Co.*, No. 99-11059, 2001 WL 184579 (5th Cir. Feb. 26, 2001), *opinion revised and superseded*, 245 F.3d 474, 488-89 (5th Cir. 2001)). "[A] district court must not set aside a verdict as either inadequate or excessive merely because the district court would have acted differently if it had been the trier of fact or because the jury could have come to a different conclusion that the trial judge

feels was more reasonable." *Stebbins v. Clark*, 5 F.App'x 196, 202 (4th Cir. 2001).

When reviewing a motion for a new trial, the court is "permitted to weigh the evidence and consider the credibility of witnesses." *Cline*, 144 F.3d at 301 (citing *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989)). A district court has broad discretion in determining whether a jury's award of compensatory damages is excessive. *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 334 (4th Cir. 2013).

"Where a motion for a new trial is based upon the alleged excessiveness of the jury's damages awards, federal standards apply to federal claims, but state law standards must be applied to state law claims." *Clehm v. BAE Sys. Ordnance Sys., Inc.*, No. 7:16-cv-00012, 2018 WL 6594612, at *3 (W.D.Va. Dec. 14, 2018) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426–31 (1996); *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 280–81 (4th Cir. 1999); *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279-80 (1989)); *see also McCollum v. McDaniel*, 32 F.App'x 49, 56 (4th Cir. 2002) (explaining that a "trial court must apply state law standards" to state law claims "in determining whether to grant a new trial *nisi* remittitur"). Accordingly, a district court must "apply the substantive component of a state's law concerning the excessiveness of a

verdict."  *Steinke v. Beach Bungee, Inc.*, 105 F.3d 192, 197 (4th Cir. 1997).

Here, the cause of action at issue is for gross negligence, a state law claim.  Under Maryland law,

> [t]he standard to be applied by a trial judge in determining whether a new trial should be granted on the ground of excessiveness of the verdict has been variously stated as whether the verdict is "grossly excessive," or "shocks the conscience of the court," or is "inordinate" or "outrageously excessive," or even simply "excessive."

*Hebron Volunteer Fire Dep't, Inc. v. Whitelock*, 166 Md.App. 619, 628 (2006) (quoting *Banegura v. Taylor*, 312 Md. 609, 624 (1988)); *see also Blitzer v. Breski*, 259 Md.App. 257, 281, *cert. denied*, 486 Md. 237 (2023) (quoting *Cunningham v. Baltimore Cnty.*, 246 Md.App. 630, 703 (2020)) (ruling that a trial court may conclude that a verdict is excessive if the verdict is "'grossly excessive' or 'shocks the conscience of the court[]'").  "[A] court must act in deference to the jury's verdict because 'the jury is sacrosanct and its importance is unquestioned.'"  *Blitzer*, 259 Md.App. at 281 (quoting *John Crane, Inc. v. Puller*, 169 Md.App. 1, 53 (2006)).  A district court's discretion in determining whether to grant a new trial based on excessiveness or damages is "'wide' and 'virtually boundless[.]'"  *Blitzer*, 259 Md.App. at 281; *see also Hebron*, 166 Md.App. at 628 (citing *Banegura*, 312 Md. at 624) ("[T]he trial court has broad discretion to determine whether a jury's damages

award is so excessive that it warrants a new trial, and to give the plaintiff the alternative option of accepting a remittitur.")

Mr. Durant argues that the court should order a new trial nisi remittitur because "the compensatory damage award of $250,000 is excessive, not proportional to evidence of the actual injury incurred by Plaintiff, and not focused on the injuries sustained by Plaintiff." (ECF No. 145-1, at 14). He contends that "[a]n award of compensatory damages is excessive as a matter of law if evidence of emotional distress is not 'demonstrable, genuine, and adequately explained.'" (ECF No. 145-1, at 15) (quoting *Jones v. SouthPeak Interactive Corp. of Delaware*, 982 F.Supp.2d 664, 678–79 (E.D.Va. 2013), *aff'd*, 777 F.3d 658 (4th Cir. 2015)) (in turn quoting *Price*, 93 F.3d at 1252).[3]

Applying the *Knussman* factors, Mr. Durant asserts: (1) "the evidence considered by the jury in this case did not include medical attention or psychiatric or psychological treatment, physical injuries suffered, or loss of income[;]" (2) "[a]lthough[] Plaintiff's family members corroborated the alleged

---

[3] Mr. Durant misunderstands *Jones* and *Price*. In those cases, the courts ruled that evidence of emotional distress must be demonstrable, genuine, and adequately explained when the plaintiff asserts a constitutional violation and the award is predicated exclusively on the plaintiff's testimony, or that of the plaintiff and his or her spouse. *Jones*, 982 F.Supp.2d at 673; *Price*, 93 F.3d at 1251-52. Here, the jury awarded Mr. Nicholson emotional distress damages for a common law tort claim and Mr. Nicholson presented evidence of his damages from individuals other than himself and his spouse.

emotional distress[,]" there were "inconsistencies in Plaintiff's own testimony and evidence presented[;]" (3) regarding the factual context in which the emotional distress developed, "the firearm was displayed briefly and never pointed at Plaintiff, the subsequent engagement with the police was about two hours long, and Plaintiff had limited contact with Defendant after the fact[;]" (4) "there is no way to parse what symptoms preexisted and what was caused by Defendant's conduct[]" because "Plaintiff testified that he had preexisting mental health symptoms (for which he previously received psychological treatment) that were about the same as those that allegedly stemmed from his encounter with Defendant[;]" and (5) "while Plaintiff during direct examination testified that it was [] of his own volition to seek administrative and legal relief, it was clear through Plaintiff's testimony during cross-examination and Plaintiff's mother's testimony that those decisions were driven by the mother." (ECF No. 145-1, at 15-18).

Mr. Durant requests that the court find a comparison in *Jones*, where the court reduced the compensatory damages award because the plaintiff did not present evidence of psychological or psychiatric treatment and did not show any physical injury as a result of her emotional distress. (ECF No. 145-1, at 18-19) (citing *Jones*, 982 F.Supp.2d at 680).

Finally, Mr. Durant contends that the award should be reduced because Mr. Nicholson's counsel "requested the jury to place a

value on the enforcement of societal standards and appropriate social conduct, rather than the value to compensate Plaintiff for his emotional distress associated with his interaction with Defendant." (*Id.* at 20).

Mr. Nicholson responds that the court should not disturb the jury's award because it is not "grossly excessive or shocking to the conscience." (ECF No. 148, at 16-17). He objects to the application of the *Knussman* factors to the common law gross negligence claim at issue because they apply to federal constitutional claims. (*Id.* at 18). He argues that *Jones*, a case involving employment actions against a whistleblower, and *Knussman*, a case involving denial of maternity leave, are not "remotely comparable to having a total stranger angrily hold one's life in the balance." (*Id.* at 19-20). He asserts that even if the court applies the *Knussman* factors, they weigh in favor of leaving the verdict undisturbed because:

> there was no testimony of medical attention, but this is not a dispositive factor by any means because all other relevant factors weigh in favor of the jury's award. The degree of the mental distress was understandably severe. The factual context (having a gun drawn on a minor by an adult) strongly supports the jury's award. There was ample evidence from family corroborating Mr. Nicholson's testimony. The nexus between the conduct of the defendant and the emotional distress is clear, immediate and direct. The jury was not asked to find any mitigating circumstances and none were found.

> The factor mentioning "physical injuries
> suffered as a result of emotional distress" is
> difficult to understand. Any physically [sic,
> injuries] would be separately compensable.
> However, to the extent that the court was
> referring to physical effects of emotional
> distress, they were evident here in the form
> of crying and sleeplessness.
>
> Finally, loss of income is irrelevant in the
> case of a minor, but he did testify to losing
> time from school due to his anxiety, which is
> the equivalent to lost time from work for
> minor who must attend school 8 hours a day.

(ECF No. 148, at 20).

Here, the jury's award of $250,000 in compensatory damages for emotional distress is not "grossly excessive" and does not "shock the conscience of the court." *Blitzer*, 259 Md.App. at 281 (quoting *Cunningham*, 246 Md.App. at 703). Although it is unclear whether the *Knussman* factors apply to common law tort claims, their application aids in determining whether the damages award is excessive.[4]   Mr. Nicholson did not receive any medical,

---

[4] The *Knussman* factors—to be considered in determining whether an award for emotional distress for a constitutional deprivation is excessive—are as follows:

> medical attention resulting from the emotional
> duress; psychiatric or psychological
> treatment; the degree of such mental distress;
> the factual context in which the emotional
> distress developed; evidence corroborating
> the testimony of the plaintiff; the nexus
> between the conduct of the defendant and the
> emotional distress; mitigating circumstances,
> if any; physical injuries suffered as a result
> of emotional distress; and loss of income, if
> any.

psychiatric, or psychological treatment after the incident at issue, but these factors are not dispositive. *See, e.g.*, *Van Rossum v. Baltimore Cnty., Maryland*, No. 14-cv-0115-GJH, 2017 WL 4023342, at *4 (D.Md. Sept. 11, 2017) (concluding that the record supported the award of compensatory damages where the plaintiff did not undergo treatment for depression).

Mr. Nicholson, his mother, sister, and grandmother testified to the severe degree of mental distress he experienced.  They testified credibly and consistently that before the incident at issue, Mr. Nicholson was social and enjoyed being outside and playing sports with friends, but that his demeanor changed after the incident.  (ECF Nos. 142, at 36-37, 72-79, 95-96; 143, at 112-16, 128, 152, 158-63, 166-71, 196, 201-05).  They testified that he became withdrawn; did not want to see friends; did not want to walk to school to avoid passing the location where the incident occurred; cried often; slept in his mother's and grandmother's rooms; called his family members constantly, even at a military school that ordinarily did not allow such frequent phone calls; did not eat much; experienced sleeplessness, nausea, and depression; began fearing and avoiding police officers; and in general was no longer himself.  (*Id.*).  Mr. Nicholson also testified that although he did not want to attend military school

---

*Knussman*, 272 F.3d at 640.

before the incident, he changed his mind because he did not want to live in his family's home anymore.  (ECF No. 143, at 160-61).  Although Mr. Nicholson testified that he had seen a therapist and experienced sleeplessness before the incident, he also testified that his symptoms worsened after the incident.  (ECF No. 143, at 169-70); *see also Clehm*, 2018 WL 6594612, at *8 (concluding that the record supported the award of compensatory damages where the plaintiff had been prescribed antidepressants and migraines before the incident at issue).  The testimony thus establishes a clear nexus between Mr. Durant's conduct and Mr. Nicholson's emotional distress.

The factual context in which Mr. Nicholson's emotional distress developed involved an adult drawing a gun on a minor, a distressing event for a person of any age.  The jury was not asked to find mitigating circumstances.  Mr. Nicholson testified that he experienced physical effects of his emotional distress including sleeplessness and nausea, and he and his family members testified that he began crying frequently.  (ECF Nos. 142, at 73, 77, 96; 143, at 113, 158-59, 166).  Finally, loss of income is not relevant in the case of a minor.  The record thus contains sufficient evidence of injury to support the jury award of $250,000 in compensatory damages for emotional distress.

Moreover, other courts have concluded that similar awards of compensatory damages in comparable cases were not excessive.  In

*Brooks v. Jenkins*, 220 Md.App. 444 (2014), the Court of Special Appeals of Maryland affirmed the trial court's decision that an award of $200,000 for emotional distress damages in connection with a police officer's shooting of a family's dog was not excessive. *Id.* at 473-76.  Of course, the facts in this case are different—Mr. Durant did not shoot, but rather drew his firearm— but *Brooks* establishes that an award in the realm of $250,000 for emotional distress damages is not excessive under Maryland law.

In *Francis v. Johnson*, 219 Md.App. 531 (2014), the Court of Special Appeals of Maryland upheld the trial court's decision to remit the jury award for compensatory damages in connection to three police officers' taking of the plaintiff in a police van, assaulting him, breaking his phone, and dropping him off without a way home. *Id.* at 537-38, 561.  The jury had awarded the plaintiff $465,000 in compensatory damages, the trial court found the award "grossly excessive," the plaintiff agreed to a remittitur of $165,000, and the appellate court further reduced the resulting compensatory damages of $300,000 to $215,000 due to duplicative compensation. *Id.* at 537, 549-50, 561.  Again, the facts are not perfectly analogous, but *Francis* further illustrates that a compensatory damages award of $250,000 is not excessive in a case involving assault.

In *Market Tavern, Incorporated v. Bowen*, 92 Md.App. 622 (1992), the Court of Special Appeals of Maryland upheld the trial

court's decision that the jury's award of $150,655.25 in compensatory damages was not excessive where security guards beat and kicked the plaintiff, causing permanent sensitivity of teeth to hot and cold temperatures and jaw pain. *Id.* at 630-31, 638, 656-58. Even though Mr. Nicholson did not testify to experiencing any permanent physical pain, this opinion, issued over thirty years ago, also provides support for an award of $250,000 in compensatory damages.

Finally, although a federal case, *Hicks v. Ferreyra*, 582 F.Supp.3d 269 (D.Md. 2022), *aff'd*, 64 F.4th 156 (4th Cir. 2023), *cert. denied*, 144 S.Ct. 555, 217 L.Ed. 2d 295 (2024), is also instructive. There, United States Park Police officers stopped a United States Secret Service special agent who was waiting to join a government motorcade. *Id.* at 276. One of the officers noticed a handgun in the special agent's vehicle and the officer drew his weapon, after which the special agent identified himself, showed his Secret Service credentials, and explained that he was on duty. *Id.* The officers held the special agent's weapon and credentials for over 40 minutes, preventing him from carrying out his assigned duties. *Id.* After the officers let him go, one of the three officers pulled the special agent over again and detained him a second time, claiming that he was driving erratically and illegally talking on his cell phone. *Id.* The special agent filed *Bivens* and civil conspiracy claims. *Id.* The jury awarded a total of

$205,000 in compensatory damages against two officers. *Id.* at 276-77. The court denied the officers' motion for a new trial nisi remitter, concluding that the total of $205,000 in compensatory damages was not excessive. *Id.* at 294-95.

Based on a review of jury awards in similar cases, the award of $250,000 in compensatory damages for emotional distress is not outside the norm. Nor does such an award shock the conscience. *Blitzer*, 259 Md.App. at 281 (quoting *Cunnningham*, 246 Md.App. at 703). Because the jury award of compensatory damages is not excessive, Mr. Durant's request for remittitur of the compensatory damages award will be denied.

## III. Conclusion

For the foregoing reasons, Mr. Durant's motion to alter or amend the judgment, or in the alternative, motion for a new trial nisi remittitur will be denied. A separate order will follow.

                    /s/
_____
DEBORAH K. CHASANOW
United States District Judge
